**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

KIP LEE LUTTRELL,

Plaintiff,

*v.* CASE NO. 08-CV-12680

COMMISSIONER OF SOCIAL SECURITY, DISTRICT JUDGE AVERN COHN
MAGISTRATE JUDGE CHARLES E. BINDER

Defendant.
______________________________/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

## I. RECOMMENDATION

In light of the entire record in this case, I suggest that since the Commissioner has not issued a final decision on issues relating to Plaintiff's claim that he is disabled, this Report and Recommendation is limited to consideration of the Commissioner's decision relating to the allocation of earnings to be attributed to Plaintiff. Since I find that substantial evidence supports the Commissioner's determination on this issue, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Doc. 9, 16.)

Plaintiff was 52 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 8, 21.) Plaintiff's relevant employment history includes self-employment as a partner in a van customization business. (Tr. at 10.)

Plaintiff filed the instant claims for DIB and SSI benefits on January 12, 1999, alleging that he became unable to work on January 1, 1995, due to attention deficit disorder, back disorder, and knee impairment. (Tr. at 10, 71, 77, 80.) The claims were denied at the initial administrative stages. (Tr. at 77.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 31, 2000, before ALJ Bennett S. Engelman. (Tr. at 10.) In a decision issued October 26, 2000, the ALJ found that Plaintiff met the special disability insured status requirements on December 31, 1994, that he engaged in substantial gainful activity because he owned and operated a custom van business, and that he was not disabled prior to December 31, 1994, but that he was disabled when he submitted his application for SSI benefits on January 12, 1999. (Tr. at 10, 71-76.) The ALJ therefore denied Plaintiff's claim for DIB, but granted his claim for SSI benefits, and directed the Commissioner to award benefits, if he is found eligible. (Tr. at 76.)

Plaintiff requested a review of this decision in January 2001, asserting that his "income tax returns erroneously attributed my personal income to my business." (Tr. at 10, 27.) The Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ for further consideration. (Tr. at 10.) The Appeal's Council indicated that the ALJ's finding that Plaintiff met the disability insured status requirements as of December 31, 1994, was correct. The Council specifically directed the ALJ to consider whether Plaintiff and his then-wife Mariette[2] operated Kip's Custom Van Conversions as a partnership in 1990 and thereafter such that the earnings from the business reported solely to Mariette actually should have been attributed equally and thus divided between the two of them. (Tr. at 10-11.) The Council further directed the ALJ to consider whether Plaintiff provided services to the business in determining whether the business was operated as a partnership, and if he did, whether such services demonstrated that Plaintiff had the ability to engage in substantial gainful activity, and thus, whether he was disabled on the alleged onset date. (Tr. at 11.)

On remand in July 2001, ALJ John A. Ransom vacated the Commissioner's reconsideration determination of November 22, 1999, and remanded the case back to the Commissioner for further consideration of additional evidence filed by Plaintiff. (Tr. at 11, 317-18; *see also* Tr. at 319.) The Commissioner considered Plaintiff's amended earnings claims and concluded that Plaintiff and Mariette operated the van customizing business as a partnership and thus attributed one-half of the net earnings to each of them. (Tr. at 11.) The couple's earnings were revised for periods covering 1989-1990 and 1995-1999. (Tr. at 11, 320-22.) Neither Plaintiff nor Mariette appear to have contested this decision.

[2]Plaintiff and Mariette (whose name sometimes appears as "Marietta" in the record) began living separately sometime in 2005, were still separated at the time of the July 2006 hearing, and were formally divorced in March 2008. (Tr. at 346, 392, 441.)

Instead, on June 20, 2005, Plaintiff filed a new application for a period of disability and DIB benefits based on an onset date of January 12, 1999. (Tr. at 11, 30-33.) The Commissioner's employee who initially processed Plaintiff's claim noted that Plaintiff indicated he had been in a divorce process and that an IRS agent advised him to show taxes under someone else's name, i.e., his then-girlfriend who later became his wife. (Tr. at 34.) Although Plaintiff had initially reported that he had not worked in 1999 or 2000, he indicated he had been self-employed in his van customizing business in 1999 and 2000, until the business was sold in November 2000. (Tr. at 12.) Since Plaintiff performed both physical labor and directed his wife and son when he was unable to do the work himself, the Commissioner determined that Plaintiff had engaged in substantial gainful activity through June 28, 2000, since he worked in excess of 80 hours per month up until that date. (Tr. at 12, 55.) The Commissioner then amended his date last insured to December 31, 2005; however, there is no indication that Plaintiff was notified of this determination. (Tr. at 12.)

The case was forwarded back to the ALJ in April 2006 from a district manager who believed that the updated information may affect the determination as to alleged onset date because he had possibly engaged in substantial gainful activity through June 28, 2000, and the date of last insured status had potentially advanced to December 31, 2005. (Tr. at 12, 56-57.) A hearing was held on July 21, 2006. (Tr. at 435.) In February 2007, Plaintiff's counsel sent a letter to the ALJ, indicating his desire to amend the alleged onset date of disability to June 28, 2000. (Tr. at 298-300.)

In a decision dated April 3, 2007, the ALJ affirmed his prior decision of October 26, 2000, finding Plaintiff remained eligible for SSI benefits but was not entitled to a period of disability or disability insurance benefits. (Tr. at 12, 21-23.) The ALJ stated:

> The issue of insured status having not been objected to at the hearing in July 2000 is *res judicata* on that issue and he was not insured for Disability Insurance Benefits on January 12, 1999. Any efforts to amend his income tax returns subsequently have no effect on that issue. An issue not raised at the initial hearing before an Administrative Law Judge is waived. *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999).

(Tr. at 22-23.) On February 28, 2008, the Appeals Council disagreed and noted that after the time limit for any year ends, the Commissioner may correct the record of an individual's earnings for that year if satisfactory evidence shows the need for correction, citing 20 C.F.R. § 404.822(e)(4). (Tr. at 12, 352-56.) The Appeals Council indicated that it was prepared to find that although Plaintiff indicated that he and Mariette sold Kip's Custom Van Conversion in November 2000, it appeared that he "and Mariette did not stop working in self-employment and continued to operate a business entitled Kustom Mobility, and that Mariette continued to report self-employment earnings through 2003." (Tr. at 354.) Therefore, the Appeals Council stated that absent new and material evidence or pertinent legal argument, it was prepared to issue a decision finding:

> 1. You and Mariette operated a business involving the customization of vans from 1989 through 2003.
>
> 2. You and Mariette operated the business as a partnership, with each of you having one-half ownership.
>
> 3. All self-employment earnings reported to the Commissioner's records of your and Mariette's earnings for 1989 through 2003 are combined and reallocated with one-half of the total earnings being credited to each of you.

(Tr. at 354.)

On April 2, 2008, Plaintiff's counsel submitted a letter and additional evidence to the Appeals Council contending that the evidence could not support a finding that Plaintiff had been engaged in substantial gainful activity since June 28, 2000. (Tr. at 390-91.) Attached to the letter

was a "joint statement of Kip L. Luttrell and Mariette Luttrell Kowalski" that was made "under penalty of perjury," and which stated:

> 1. Starting in approximately 1989, we jointly owned and operated a van customizing business known as Kip's Kustomizing. Kip performed the actual customizing work and Mariette performed the bookkeeping, clerical, and sales work.
>
> 2. The assumed name (d/b/a) for that business was registered to Mariette.
>
> 3. Starting around 1995 or 1996, Mariette started a separate business, Kustom Mobility, under a separate assumed name, also registered to her.
>
> 4. Kustom Mobility was solely owned and operated by Mariette. Its business involved ordering and selling products such as wheelchair lifts. The installation work was performed by the separate business, Kip's Kustomizing, which Mariette continued to work for.
>
> 5. Due to Kip's progressive disability, he performed less and less of the work for Kip's Kustomizing until he stopped altogether in 1999. After that, the installation work was performed by an employee, Chuck Wilson, who eventually bought the business around October 2000.
>
> 6. After October 2000, the businesses were completely separated and Mariette moved Kustom Mobility to a different building in the same area. The installation work continued to be performed by Chuck Wilson at the original location, but there was no other relationship between the two businesses.
>
> 7. Kip never had any involvement in Kustom Mobility, either before or after stopping work for Kip's Kustomizing, other than providing installation services to its customers. He did no work and received no income from either business after selling Kip's Kustomizing in 2000.
>
> 8. Both businesses are now defunct and Chuck Wilson's whereabouts are unknown.

(Tr. at 392.)

On April 18, 2008, the Appeals Council issued a decision with findings consistent with the proposed findings it made in February 2008 (*see* Tr. at 352-57), i.e., that Plaintiff and Mariette operated a van customization business as a partnership from 1989 through 2003 such that Mariette's earnings from 1989 through 2003 would be combined and reallocated with one-half of

the total earnings credited to each of them. (Tr. at 14.) The Appeals Council did not find the joint statement persuasive and noted that the relevant tax returns reflected only one business, Kip's Kustoms, that there was no schedule entitled Kustom Mobility, and that there was "no evidence of record which shows that Kip's Kustoms was sold in 2000, or that there were separate business records, such as licenses, bank accounts, sales tax reports, or other third-party verification of the two purportedly separate businesses." (Tr. at 13-14.) The Appeals Council added that "[g]iven the claimant's history of not properly reporting his employment . . . the Appeals Council finds that his and Mariette's new unsupported allegations are not credible." (Tr. at 14.) As noted by counsel for the Defendant Commissioner, this decision is the final decision only with respect to the allocation of earnings between Plaintiff and Mariette from 1989 through 2003. (Doc. 16 at 9-10.)

On June 23, 2008, Plaintiff filed the instant suit seeking judicial review of the Appeals Council's decision. (Doc. 1.)

**B. Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a

different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act,

including the Disability Insurance Benefits Program of Title II, 42 U.S.C. §§ 401 *et seq*., and the Supplemental Security Income Program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work . . . ." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D. Analysis and Conclusion**

Plaintiff argues that his due process rights were violated when the Appeals Council "made an entirely new finding on an issue that had been previously settled; [sic] that the plaintiff continued to perform work activity after June 28, 2000 and through the end of 2003." (Doc. 9 at 3.) Plaintiff notes that since he alleged he became disabled as of June 2000, the "Appeals Council implies that the earnings in 2001 through 2003 that are now allocated to the plaintiff might disqualify him from disability, presumably as constituting 'substantial gainful activity.'" (Doc. 9 at 20.) Plaintiff contends that "the net earnings that the Appeals Council attributed to the plaintiff [are] $3,999 in 2001, $3,280 in 2002, and $1,981 in 2003 [and that] [i]n these three years, by the Appeals Council's findings, the plaintiff earned on average, $283, $273, and $165 per month." (Doc. 9 at 20.) Although Plaintiff notes that the rules for calculating substantial gainful

activity for self-employed persons are indeed complex,[3] Plaintiff contends that any allocated earnings would fall far below the minimum wage figures that could be considered substantial gainful activity for those years, i.e., $740, $780, and $800 per month for 2001-2003. (Doc. 9 at 21.) Therefore, Plaintiff contends that "despite the Appeals Council's implication to the contrary, even if these earnings were attributed to the plaintiff, they are too low to disqualify him from receiving benefits." (Doc. 9 at 21.)[4]

Defendant counters that since the Appeals Council did not decide that Plaintiff engaged in substantial gainful activity, but rather only decided the issue of earnings reallocation, there is no final decision of the Commissioner on this issue and thus, Plaintiff has failed to exhaust all available administrative remedies, and arguments about substantial gainful activity are premature. (Doc. 16 at 10,15.)

I first suggest that the Appeals Council's findings did not in fact determine whether Plaintiff has engaged in substantial gainful activity during the years in question. As a result, there is no final decision by the Commissioner on this issue, and thus, this Court lacks jurisdiction even if Plaintiff's challenge is characterized as based on a constitutional challenge, i.e., a due process violation. *See Johnson v. Comm'r of Social Security*, 97 Fed. App'x 526, 528 (6th Cir. 2004); *Willis v. Sullivan*, 931 F.2d 390, 396 (6th Cir. 1991).

---

[3]The formulae are found at 20 C.F.R. § 404.1572-75. *See also Weiland v. Barnhart*, 239 F. Supp. 2d 875, 886-90 (N.D. Iowa 2002).

[4]I further note that self-employment may be considered substantial gainful employment regardless of whether the plaintiff receives an immediate income and despite the fact that the business is unsuccessful. 20 C.F.R. §§ 404.1573(d), 404.1575(a); *Morris v. Apfel*, 1999 WL 987357, at *2 (10th Cir. Nov. 1, 1999) (Commissioner will evaluate claimant's services to the business regardless of whether claimant receives an immediate income); *Byington v. Chater*, 76 F.3d 246, 250 (9th Cir. 1996) (hours, skills, output, efficiency, duties and responsibilities involved in work as self-employed horse breeder, welder and auto mechanic led to finding that the businesses constituted substantial gainful employment even though businesses were unsuccessful).

As to the Appeals Council's findings themselves, the question presented is whether substantial evidence supports the findings that "[Plaintiff] and Mariette operated a business involving the customization of vans from 1989 through 2003," that they "operated the business as a partnership, with each of [them] having one-half ownership," and that "[a]ll self-employment earnings reported to the Commissioner's records of [Plaintiff's] and Mariette's earnings for 1989 through 2003 are combined and reallocated with one-half of the total earnings being credited to each of [them.]" (Tr. at 14, 354.)

The Appeals Council relied upon the fact that the relevant tax returns reflected only one business, Kip's Kustoms, that there was no schedule entitled Kustom Mobility, and that there was "no evidence of record which shows that Kip's Kustoms was sold in 2000, or that there were separate business records, such as licenses, bank accounts, sales tax reports, or other third-party verification of the two purportedly separate businesses." (Tr. at 13-14.) The Appeals Council also gave its reasoning for rejecting the "joint statement" of Plaintiff and Mariette by explaining that, "[g]iven the claimant's history of not properly reporting his employment . . . the Appeals Council finds that his and Mariette's new unsupported allegations are not credible." (Tr. at 14.)

Had the Appeals Council found the joint statement credible and relied upon it, substantial evidence might have supported the findings advocated by Plaintiff. However, I suggest that substantial evidence does support the Appeals Council's findings as made. This Court may not reverse the Commissioner's decision merely because "there exists in the record substantial evidence to support a different conclusion." *McClanahan*, 474 F.3d at 833. Therefore, I suggest that Plaintiff's motion for summary judgment be denied. *See Lutz v. Astrue*, No. 06-4876, 2008 WL 2845612, at *6 (D. Minn. July 21, 2008) (denying plaintiff's motion for summary judgment because substantial evidence supported Commissioner's decision where, "[f]rom [plaintiff's]

testimony and supporting documentation, the record might support a finding that she had warnings from [family trucking business] in 1999 [b]ut the record likewise supports a contrary finding, based on the fact that [plaintiff] did not initially report her earnings and that she was unable to produce contemporaneous records of those earnings.")

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.*, 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Charles E Binder

CHARLES E. BINDER
United States Magistrate Judge

Dated: April 14, 2009

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served upon counsel of record via the Court's ECF system, and served on U.S. District Judge Cohn in the traditional manner.

Date: April 14, 2009 By s/Patricia T. Morris
Law Clerk to Magistrate Judge Binder